## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Paul Aery,                                    Civ. No. 20-2154 (KMM/BRT)

                        Plaintiff,

v.                                                 **REPORT AND RECOMMENDATION**

Sgt. Collins,

                        Defendant.

James Paul Aery, *pro se* Plaintiff.

Kathleen M. Ghreichi, Esq., Minnesota Attorney General's Office, counsel for
Defendant.

BECKY R. THORSON, United States Magistrate Judge.

This matter is before the Court on both parties' motions for summary judgment.
(Doc. Nos. 39, 70.) For the reasons set forth below, this Court recommends that
Defendant Sgt. Collins's motion for summary judgment be granted, Plaintiff James Paul
Aery's motion for summary judgment be denied, this action be dismissed with prejudice
for failure to exhaust administrative remedies and failure to allege a prior physical injury
under the Prison Litigation Reform Act, and Plaintiff's other pending motions and
requests be denied as moot.

## I.    BACKGROUND

On April 18, 2020, Minnesota Department of Corrections ("DOC") employee
Sergeant Holly Collins coughed in front of inmate James Paul Aery. At the time, Sgt.

Collins had been assigned to the K-2 living unit for offenders at the Minnesota Correctional Facility at Faribault ("MCF-Faribault") where Aery was housed. (Doc. No. 74, Declaration of Sergeant Holly Collins ("Collins Decl.") ¶¶ 1–2.) Sgt. Collins had passed the COVID-19 screening procedure before her shift on April 18, 2020 and had arrived at the staff desk in the K-2 living unit when, according to her, she "turned [her] head and coughed into [her] elbow." (*Id.* ¶ 2.) Aery and another inmate, Josh Daniels, were both present. (*Id.*) At that time, the DOC had issued masks for optional use but did not require inmates or DOC staff to wear masks except under certain circumstances, none of which apply here.[1] (Doc. No. 75, Declaration of Laura Westphal ("Westphal Decl.") ¶¶ 4–6, Exs. 4–5.) Sgt. Collins was not wearing a mask when she coughed. (Doc. No. 1-1 at 1, 7, 12.) Sgt. Collins later attested that she suffered from seasonal allergies and often has a dry cough during the spring and fall. (Collins Decl. ¶ 3.)

That same day (April 18, 2020), Aery filled out an Offender Kite Form ("kite").[2] In his kite, he wrote the following:

> Today between 1055 AM (sic) and 1100 AM (sic) Sgt. Collins responded to me asking where her mask was with coughing threateningly in my direction while saying she doesn't need to wear one. Offender Josh Daniels was also in the path of her coughing and a witness to this behavior. Before she left the unit, Mr. Daniels told her we will be making a complaint and

---

[1]    Those circumstances included visits to the health services clinic and inmates who were in quarantine or isolation and had been directed by staff to wear a mask. (Doc. No. 75, Declaration of Laura Westphal ("Westphal Decl."), Ex. 4 at 2.) On April 23, 2020, masks became mandatory for staff and inmates across all Minnesota correctional facilities. (*Id.* ¶ 6, Ex. 5.)

[2]    Pursuant to DOC Policy No. 303.101, a "kite" is "a printed form issued by the department that offenders use to communicate with [DOC] staff." (Westphal Decl. ¶ 10, Ex. 7.)

she coughed in a joking manner and said no one will listen. Please retain the video of this incident as I plan to obtain a copy through court order. Our safety is at risk from her misfeasance.

(Doc. No. 1-1 at 1.)

After learning that Aery had submitted a kite, Sgt. Collins apologized to Aery and Daniels on April 21, 2020, for coughing. (Collins Decl. ¶ 4, Ex. A.) That same day, Sgt. Collins sent an email to her supervisor, Lieutenant Karen Wadzinski, summarizing her interaction with Aery and Daniels:

> Today I spoke with both Offender #218339 Aery and Offender #210929 Daniels about me coughing in the wing on April 4-18-20. I told both Offenders that I did not intend anything malicious or threatening by me dry coughing and told them it's allergy season. Offender Daniels stated that he knows I didn't intend any harm by coughing and he didn't feel that it was malicious. He also stated that he thinks Offender Aery is making a big deal out of nothing especially since Offender Daniels and I have a good report (sic) with each other and can joke around.

> Offender #218339 Aery stated that he feels that this was disrespectful and mocking towards all the offenders in K2D. I told him I'm sorry that he felt that way and also explained to him that people and staff are going to cough at times due to the time of year it is. I also explained to him the proper procedures of social distancing if he felt scared. He asked me numerous times during the conversation if he was going to retaliated (sic) on because he wrote you a kite. I kept assuring him he wouldn't. When he found this out, he tried provoking the conversation further by stating he may keep going up the chain of command with this because he felt is (sic) wasn't necessary. I told him that's his right and he again asked if I was going to retaliate against him. I again stated that I wouldn't. By the end of the conversation, Offender Aery thanked me for speaking with him and I assured him that no staff will be joking around about the COVID19 (sic) pandemic any further.

> I should add that during the conversation, Offender Aery mentioned several times about legal matters and that he knows "his away around the legal system" as if to intimidate or provoke me to say something that he could further use against me. I did keep telling him that he can go further if it'll make him feel better.

If you'd like any further explanation, let me know.

(Collins Decl., Ex. A.)

Lt. Wadzinski responded to Aery's kite on April 21, 2020. In the Response portion on the bottom of Aery's kite, she wrote: "I addressed this with Sgt. Collins and she told me that she did speak to you and apologize (sic) to you for this incident." (Doc. No. 1-1 at 1.)

On April 23, 2020, Aery filled out another kite, this time addressed to "CPD Cunningham." (Doc. No. 1-1 at 2.) In it, he indicated that he had met with Sgt. Collins and that she had apologized. (*Id.*) He then wrote the following:

> During Sgt. Collins apology she claimed that a large amount of Coronavirus "Covid-19" numbers are flu related. I do not believe she is taking this Pandemic seriously. I still feel threatened by her blatant disregard for our safety. Allowing a person to remain in her position is dangerous considering her beliefs are not facts. She tried telling me the numbers I see on TV are much higher than they actually are.

(*Id.*) On April 27, 2020, CPD Cunningham responded: "Mr. Aery, Staff are human and when we need to apologize we should and Sgt. Collins did. I hope things are better with you now." (*Id.*)

On May 5, 2020, Aery filled out another kite addressed to "AWO J. Doeden." (Doc. No. 1-1 at 7.) He indicated that Lt. Wadzinski had "[t]old me Sgt. Collins apologized to me" and that CPD Cunningham had "[n]o response (over 6 business days)." (*Id.*) He then wrote the following:

> Sgt. Collins responded to my asking where her mask was with coughing in my direction and saying she doesn't have to wear one yet. As she was leaving the unit another inmate (Daniels) told her we would be writing her

4

up for that. Sgt. Collins response was "good luck, nobody will listen to
you."

(*Id.*) On May 6, 2020, AWO Doeden responded in a separate letter: "We take all
accusations against staff seriously. We do not share any action taken against staff with
offenders. I can tell you that this issue has been addressed." (Doc. No. 1-1 at 4, 9.)

One day later, on May 7, 2020, Aery filled out a second kite addressed to "AWO
Doeden." (Doc. No. 1-1 at 3.) He indicated that Sgt. Collins had apologized but then
excused her behavior, Lt. Wadzinski had "addressed" the issue with Sgt. Collins, and
CPD Cunningham had "excused staffs (sic) behavior." (*Id.*) He then wrote the following:

> "Staff are human" is not an acceptable response. Sgt. Collins "premonition"
> of no one will listen to you seems to be coming true. Covering for this
> behavior will promote more abuses by staff and culpibility (sic). I have
> spoken to an attorney and I am considering pressing charges. If I were to
> conduct myself how Sgt. Collins did I would be sent to Segregation, lose
> my job and receive punishment. Nobody would excuse my behavior by
> defending it as a mistake or lack of consideration.

(*Id.*) On May 11, 2020, AWO Doeden responded again in a separate letter: "I have
addressed this issue with you already. Attached is my kite response dated 5/6/20. There is
no change in my response." (*Id.* at 8.)

On June 1, 2020, Aery filled out a kite addressed to the "Warden." (Doc. No. 1-1
at 11.) He indicated that AWO Doeden was "not privy to action taken." (*Id.*) He then
stated the following:

> Stating an issue has been addressed and not telling me how or the what (sic)
> extent is abuse of power. How is it fair to anyone to cover for people who
> act in malicious ways when in a position of power? Where is the Justice in
> that? This is a prime example of why people are protesting across the U.S.
> Please make a difference by not condoning and protecting "one of your
> own."

5

(*Id.*) The "Warden's Office" responded the next day on June 2, 2020, by typing out a response in the Response section of Aery's June 1, 2020 kite:

> See attached.[3] Also per DOC policies 106.230, Data Protection for Human Resources Systems and Personnel Files, and policy 106.210, Providing Access to and Protecting Government Data, this information is not available to offenders. This has nothing to do with "abuse of power" and everything to do with policies that were established by the Minnesota Government Data Practices Act, Minnesota Management and Budget, and the Department of Corrections.

(*Id.*)

On June 4, 2020, Aery filled out a second kite addressed to the "Warden." (Doc. No. 1-1 at 5.) He stated that he had already contacted staff regarding his issue, including Lt. Wadzinski (who he noted had told him the issue had been "addressed"), CPD Cunningham (who he noted had told him "staff are human"), and AWO Doeden (who he noted had responded with the quote "do not share action taken"). (*Id.*) Then Aery wrote the following:

> These are all responses used to cover up for someone (Sgt. Collins) who doesn't care about inmates and is under the impression she is immune to liability. Sgt. Collins stated "nobody will listen." Why would she think that? What sort of collusion is within this system to give her the idea she is not able to be held responsible for vulgar comments and behavior? CPD Cunningham's comment to me "I hope things are better with you now" is not a question but an abstract attempt to dissuade me from making further complaints. The people in these kites are all irresponsible and should be let go.

---

3    The attachment referred to in the "Warden's Office" June 2, 2020, response is not clearly identified in the exhibits attached to Aery's Complaint. However, it is not relevant regarding the issue before this Court, nor does it alter this Court's conclusion regarding Aery's claims.

(*Id.*) The "Warden's Office" responded the next day, on June 5, 2020, typing the

following response in the Response section of Aery's June 4, 2020 kite: "See attached.

You have already received a response from the warden's office on 6-2-20." (*Id.* at 6.)

Several months later, on September 29, 2020, as part of the second step in the

DOC's administrative grievance procedure, Aery filled out a Minnesota Department of

Corrections Offender Grievance form, in which he wrote the following grievance:

> Sgt. Collins coughed in a threatening and negligent manner; on my person,
> when asked why she was not wearing a mask. When told she could expect a
> lawsuit for doing so she responded, "good luck, nobody will listen to you."
> An apology followed by misdirecting comments of Covid-19 numbers
> being flu numbers to avoid responsibility for causing great fear is ignorant
> due to the flu being a serious and potentially deadly disease also.

(Doc. No. 1-1 at 12.) On October 2, 2020, Aery received a response from Grievance

Coordinator K. Grunseth who alerted Aery that his grievance would "not be entered as a

formal grievance" because he had not filed his grievance "within 30 calendar days from

the date the incident occurred," as required by the DOC's grievance procedure. (Doc.

No. 1-1 at 14.)

## II.    ANALYSIS

Pursuant to 42 U.S.C. § 1983, Aery alleges in his Complaint that Sgt. Collins, on

April 18, 2020,

> wantonly disregarded my personal safety by exhibiting intentional malice
> by coughing intentionally on me causing great fear of harm while in a great
> position of authority; which is negligence, during a Pandemic for Covid-19
> in her individual and official capacities in violation of my 4th, 8th and 14th
> Amendment rights . . . which is cruel and unusual punishment.

7

(Doc. No. 1 at 4–5.)[4]

Both parties have now filed motions for summary judgment. (Doc. Nos. 39, 70.) Aery argues that the Court should grant summary judgment in his favor because "[n]o facts can possibly be challenged" and "Ms. Sgt. Holly Collins was ordered by her superior Lt. Wadzinski to apologize, which she did." (Doc. No. 39.) Sgt. Collins asserts several grounds for summary judgment in her favor, including that Aery's claims are barred because Aery failed to exhaust his administrative remedies and demonstrate that he suffered any prior physical injury, both of which are required by the Prison Litigation Reform Act ("PLRA"), codified at 42 U.S.C. § 1997e. (Doc. No. 72, Def.'s Mem. of Law in Supp. of her Mot. for Summ. J. ("Def.'s Mem.") 6–9.)

A.    **Standard of Review**

Summary judgment is appropriate if, "after viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmovant, no genuine issues of material fact exist, and the movant is entitled to judgment as a matter of law." *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011) (quotation omitted). In ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor," because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

---

[4]    As relief, Aery requests (1) injunctive relief "in the form of training for all Defendants for empathy," (2) "employment termination for Sgt. Collins," (3) "punitive and compensatory damages of monetary form in excess of $50,000.00," (4) "a Declaration my rights were violated," and (5) "costs in this suit and any additional relief the court deems just, proper and equitable." (Doc. No. 1 at 5.)

jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A disputed fact is material when its resolution "might affect the outcome of the suit under the governing law," and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001) (quotations omitted). If it does so, the non-moving party may not rest on mere allegations or denials but must point to evidence of "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256; *see also* Fed. R. Civ. P. 56(c)(1). Conclusory assertions, standing alone, are not enough to create a genuine issue of material fact. *See Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011). Where the evidence "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).

When deciding a summary-judgment motion, courts liberally construe pro se pleadings and hold them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, a pro se plaintiff's claims cannot survive a summary-judgment motion unless he has set forth specific facts demonstrating that there is a genuine issue for trial. *See Quam v. Minnehaha Cnty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Arguments and statements in briefing are not evidence and cannot

create issues of fact for purposes of summary judgment. *See Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 467 n.6 (8th Cir. 2002).

**B.    Sgt. Collins's Motion for Summary Judgment**

Sgt. Collins makes several arguments in support of her motion for summary judgment, including that, pursuant to the PLRA, Aery failed to exhaust his administrative remedies or demonstrate that he suffered any prior physical injury. (Def.'s Mem. 6–9.) In response, Aery argues that he was unaware of certain grievance procedures and that his administrative remedies were unavailable to him because he was not satisfied with the DOC staffs' responses. (Doc. No. 79 at 2; Doc. No. 82 at 1–2.)

**1.    Exhaustion of Administrative Remedies**

The PLRA requires prisoners to exhaust administrative remedies before bringing a suit regarding prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). A suit regarding prison conditions includes both claims about "general circumstances" of confinement and claims regarding "particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Administrative exhaustion is required regardless of the nature of the relief the prisoner seeks. *Porter*, 534 U.S. at 532 ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life . . . whether they allege excessive force or some other wrong."); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (explaining that proper exhaustion of remedies "means using all steps that the [prison] holds out, and doing so properly").

The PLRA does not specify an exhaustion procedure; for a prisoner's claims to be considered administratively exhausted, the prisoner must follow the grievance procedure of the facility where they are incarcerated. *Jones v. Bock*, 549 U.S. 199, 218 (2007). During April 2020 (the time of Aery's complaint), the Minnesota DOC had an established grievance procedure under DOC policy 303.100 for resolving prisoner complaints. (Westphal Decl. ¶ 10, Ex. 8.) The grievance procedure consisted of three steps. (Westphal Decl., Ex. 8.) First, an inmate has to attempt to informally resolve any issues by filing a kite and, if necessary, proceeding up the Facility Chain of Command.[5] (*Id.* at 2.) Second, if the inmate's attempts at resolving an issue informally are unsuccessful and a response has been received by the last staff person identified in the Facility Chain of Command, the inmate has to submit a facility grievance to the facility's grievance coordinator – or, if he has received threats to his physical safety or well-being (or could establish that he would be in danger if his complaint were to be known at the facility), the inmate could submit his facility grievance directly to the department grievance appeal authority at the DOC's central office. (*Id.* at 2–3.) A facility grievance has to be submitted "within 30 calendar days of when the issue most recently occurred and no sooner than seven calendar days of when [the inmate] sent a kite trying to resolve the issue." (*Id.* at 3.) Third and finally, if the inmate is not satisfied or disagrees with the

---

[5]    According to DOC Policy 303.100, the "Facility Chain of Command" is defined as "a list of facility staff to whom offenders must address their concerns prior to filing a facility grievance. The chain of command for any particular issue must not exceed three levels." (Westphal Decl., Ex. 8 at 1.)

response from the facility grievance authority,[6] he can submit a grievance appeal to the grievance appeal authority at DOC central office using the grievance appeal forms within 21 calendar days of the date the facility grievance authority signed the response. (*Id.* at 4–5.)

### 2. Aery Did Not Exhaust His Administrative Remedies Under the PLRA[7]

To demonstrate that Aery exhausted his administrative remedies, Sgt. Collins bears the initial burden of identifying the portions of the record that she believes demonstrate the absence of a genuine issue of material fact. Here, Sgt. Collins argues that although Aery submitted multiple kites between April 18 and June 4, 2020, he waited until September 29, 2020, to file a grievance at the second step of the DOC's grievance procedure. Because Aery waited longer than 30 days to file a grievance, Sgt. Collins argues Aery's federal claims against her must be dismissed under the PLRA.

---

[6]     According to DOC Policy 303.100, the "facility grievance authority" is defined as "the warden or associate warden assigned responsibility for investigation of, and response to, offender grievances." (Westphal Decl., Ex. 8 at 1.)

[7]     Aery argues that the PLRA's exhaustion requirement restrictions do not apply to him because his lawsuit regards "Prisoner Civil Rights," not "Prison Conditions." (Doc. No. 82 at 1.) Under the PLRA, civil actions brought regarding prison conditions encompasses "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). This includes "all inmate suits about prison life . . . whether they allege excessive force or some other wrong" and whether they concern "general circumstances" of confinement or "particular episodes." *Porter*, 534 U.S. at 532. Aery's allegations that Sgt. Collins violated his civil rights by intentionally coughing at him concern a particular episode of a government official during his confinement in prison. Thus, his allegations concern his prison conditions, and his lawsuit is subject to the PLRA.

As part of his first step to properly exhaust his claim, Aery had to informally resolve any issues by filing a kite with each member of the appropriate Facility Chain of Command until he had received a response by the last staff person identified in the Facility Chain of Command. Here, the record is unclear if Aery properly completed this first step. Though the record shows that Aery submitted multiple kites to Lt. Wadzinski, CPD Cunningham, AWO Doeden, and the Warden, neither party has provided evidence demonstrating if this was the proper Facility Chain of Command for Aery to follow. Aery has attached to his Complaint a document titled "Chain of Command for Offenders"; but, as Aery notes, this document is an updated version (dated September 2020) that was not the applicable "date of Chain of Command used" during the time of his complaint. (Doc. No. 1-1 at 15.) Sgt. Collins also does not clarify or contest in her memorandums or attached exhibits and declarations whether Aery has completed the first step by following the Facility Chain of Command. Thus, this Court is unable to discern from the record whether Aery successfully completed the first step under the applicable DOC grievance procedure. Therefore, Sgt. Collins has not shown that Aery failed to complete this first step.

However, even assuming Aery had properly completed this first step, the record demonstrates (and Aery does not contest) that Aery submitted his facility grievance at the second step after the applicable DOC grievance procedure deadline. At the second step, the applicable DOC grievance procedure deadline required a facility grievance to be submitted within 30 calendar days of when the issue (here, Sgt. Collins's cough) most

recently occurred.[8] (Doc. No. 1-1 at 14; Westphal Decl., Ex. 8 at 3.) The coughing

incident took place on April 18, 2020; Aery submitted his facility grievance on

September 29, 2020 – over 160 days from when the incident occurred. This is well after

the 30-day deadline. "The PLRA exhaustion requirement requires proper exhaustion . . .

[which] demands compliance with an agency's deadlines and other critical procedural

rules." *King v. Dingle*, 702 F. Supp. 2d 1049, 1067 (D. Minn. 2010) (citing *Woodford*,

548 U.S. at 90); *see also Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("[A]

prisoner must complete the administrative review process in accordance with the

applicable procedural rules, *including deadlines*, as a precondition to bringing suit in

federal court.") (citations and quotations omitted) (emphasis added); *Pritchett v. Warden

of ERDCC*, No. 4:13-CV-1406 RWS, 2015 WL 5124457, at *3 (E.D. Mo. Aug. 31, 2015)

("The PLRA exhaustion requirement requires compliance with the agency's deadlines. A

prisoner's failure to adhere to the filing deadlines deprives him of his right to bring a

§ 1983 action in federal court."). Thus, because Aery failed to meet the applicable

deadline for filing his facility grievance, he failed to properly exhaust his administrative

remedies.

---

[8]     In addition to this deadline, DOC Policy 303.100 also required that the inmate,
prior to submitting a facility grievance, receive a response "from the last staff person
identified on the Facility Chain of Command" and that he submit his facility grievance
"no sooner than seven calendar days" from when the inmate "sent a kite trying to resolve
the issue." (Westphal Decl., Ex. 8 at 3.) Aery met this latter requirement when he
submitted his facility grievance over seven days from when he submitted a kite trying to
resolve the issue. However, as already mentioned, it is unclear if Aery exhausted the
correct Facility Chain of Command. Nonetheless, even if he had, as further explained,
Aery failed to meet the pertinent 30-day deadline.

Moreover, as part of the DOC grievance procedure's third step, Aery did not appeal the response to his facility grievance by submitting a grievance appeal to the grievance appeal authority at DOC central office. Part of the reason for this may be because Aery apparently believed he had already exhausted all his administrative remedies: "I was obviously not satisfied with Administrative responses all the way to the Warden Office. I did exhaust all available administrative remedies . . . ." (Doc. No. 82.) However, by not "pursu[ing] the final stage after he received his resolution," Aery failed to exhaust his remedies at the third step. *Porter v. Sturm*, 781 F.3d 448, 452 (8th Cir. 2015); *see also Sergent v. Norris*, 330 F.3d 1084, 1086 (8th Cir. 2003) (finding that inmate was not "prevented from effectively utilizing grievance procedures" because he received a response and was able to appeal). Whether Aery subjectively believed he had already exhausted his administrative remedies is of no consequence. *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002) (holding that the PLRA "does not permit the court to consider an inmate's merely subjective beliefs, logical or otherwise, in determining whether administrative procedures are 'available'"). Instead, what matters is that, by not following the DOC grievance procedure and submitting an appeal, Aery failed to properly exhaust the DOC grievance procedure's third step and thus did not properly exhaust his administrative remedies.

In response, Aery argues that Sgt. Collins's argument that his facility grievance was untimely is "not viable" because he followed the "entire chain-of-command/authority" and was not informed he had to submit a facility grievance. (Doc. No. 79 at 2.) However, even assuming Aery properly exhausted the first step of the DOC

grievance procedure by following the Facility Chain of Command, his ignorance of the grievance procedure beyond that first step is not a valid excuse for failure to comply with those procedures. *See*, *e.g.*, *Hahn v. Armstrong*, 407 Fed. App'x 77 (8th Cir. 2001) (holding that a prisoner's ignorance of the grievance process, even where prison officials ignored his request for information about the process, did not excuse him from complying); *see also Bruce v. Fenske*, No. 4:11-CV-04106, 2013 WL 1152031, at *3 (W.D. Ark. Feb. 27, 2013), *report and recommendation adopted*, No. 4:11-CV-4106, 2013 WL 1154364 (W.D. Ark. Mar. 19, 2013) ("Despite [Plaintiff's] claim, the Eighth Circuit has clearly held that ignorance of grievance procedures does not excuse a failure to comply with those procedures.").

In sum, even assuming Aery satisfied step one of the DOC's applicable grievance procedure, viewing the allegations in the light most favorable to Aery, this Court concludes that Aery did not properly complete steps two or three and therefore failed to exhaust his administrative remedies.

### 3.  Aery Has Not Shown that the DOC's Grievance Procedures Were Unavailable to Him

Since Sgt. Collins has carried her burden to show that Aery did not exhaust his administrative remedies, Aery must show that his remedies were unavailable to him so that he is excepted from the PLRA's requirements that prisoners administratively exhaust their remedies. *Ross v. Blake*, 578 U.S. 632, 642 (2016). There are certain circumstances where administrative exhaustion procedures may not be "available" for purposes of the PLRA. *Id.* at 640–46. These circumstances include: (1) when the procedure would be a

"dead end" because officers are unable or unwilling to provide relief; (2) when the

procedure is so opaque as to become "incapable of use"; and (3) when prison officials

prevent a prisoner from utilizing the procedure through "machination, misrepresentation,

or intimidation." *Id.* at 642–46.

Aery has not alleged that the DOC's applicable grievance procedures were

unavailable to him for any of these three reasons. Instead, in his Opposition to

Defendant's Motion for Summary Judgment (Doc. No. 82), Aery argues that "[r]emedies

were not 'available' because I was obviously not satisfied with Administrative responses

all the way to the Warden Office." (Doc. No. 82.) But even assuming this statement could

be interpreted as an argument that the DOC staff were unable or unwilling to provide

relief, Aery's argument that a remedy was unavailable because he was unsatisfied is not

the correct test:

> Rather, the PLRA requires exhaustion of "such administrative remedies *as are available.*" 42 U.S.C. § 1997e(a) (emphasis added). As a result, the Supreme Court has recognized that as long as "the administrative process has authority to take *some action* in response to a complaint, [even if] not the remedial action an inmate demands," administrative remedies are "available." *Booth v. Churner*, 532 U.S. 731, 737–38, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001) (emphasis added); *see also Ross*, 136 S. Ct. at 1859 (stating the question is whether "the facts on the ground demonstrate that no . . . potential exists" for some relief).

*Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019).

Here, Sgt. Collins acted in response to Aery's initial complaint by following-up

with Aery and apologizing to Aery and Daniels in person. She also informed her

supervisor about the incident and her response. Thus, Aery received some action from

DOC staff. In addition, Aery has not pled any facts that indicate that, had he appealed,

any attempt to resolve the issue with DOC's central office would have been met with an inability or unwillingness to remedy the situation. *See Ross*, 578 U.S. at 643 (holding that a grievance procedure is a "dead end" when "the facts on the ground demonstrate" that no potential exists for any relief). Therefore, because Aery has not met his burden to show that remedies were unavailable to him, this Court concludes that the DOC's applicable grievance procedure was not a dead end and Aery is not excepted from the PLRA's requirements to exhaust his administrative remedies.

### 4.    Physical Injury

As part of his Complaint, Aery alleges that, after Sgt. Collins coughed, he experienced "physical manifestations," namely "restlessness, agitation, sleeplessness, and nervous tics." (Doc. No. 82 at 1–2.) Sgt. Collins argues these physical manifestations do not sufficiently allege a prior showing of a physical injury, which the PLRA requires. (Def.'s Mem 8–9; Doc. No. 83 at 4–5.) The PLRA precludes any federal civil action for a "mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e); *see also Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004) ("[W]e read section 1997e(e) as limiting recovery for mental or emotional injury in all federal actions brought by prisoners."); *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018) ("[A] prisoner must allege or prove more than mental or emotional injury."). The PLRA's physical-injury requirement applies to all constitutional claims. *Royal*, 375 F.3d at 723.

Here, though Aery cites ways in which he was physically impacted (restlessness, agitation, sleeplessness, and nervous tics), he does not allege that he suffered a separate

physical injury. "A straightforward reading of Section 1997e(e) requires that a prisoner cite a physical injury that is separate from mental and emotional injuries he may have suffered." *Johnson v. Reyna*, No. 20-CV-00459-PAB-MEH, 2021 WL 4305009, at *5 (D. Colo. Sept. 22, 2021) (collecting cases) (citation omitted). Physical manifestations of mental and emotional injuries do not satisfy the PLRA requirement of a prior physical injury. *See*, *e.g.*, *Jackson v. Mike-Lopez*, No. 17-CV-4278 (JRT/BRT), 2018 WL 6696296, at *6 (D. Minn. Dec. 20, 2018), *report and recommendation adopted*, No. 17-CV-4278 (JRT/BRT), 2019 WL 430855 (D. Minn. Feb. 4, 2019) ("[A] number of courts have held that a prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries.") (citation omitted). Without a physical injury, Aery's claim is barred under this requirement of the PLRA.

### 5.    Aery's State Tort Claims

In addition to his federal civil claims, Aery appears to allege state tort claims of negligence and assault against Sgt. Collins. (Doc. No. 1 at 4–5.) Sgt. Collins argues that, if the Court dismisses Aery's federal claims under his § 1983 action (over which it has original jurisdiction), it should decline to exercise jurisdiction over these state common law claims. Section 1367(c)(3) specifically provides that district courts may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Here, because this Court recommends that Aery's § 1983 action be dismissed for failure to exhaust administrative remedies and allege a prior physical injury under the PLRA, this Court also recommends that, to the extent Aery alleges state tort claims of negligence and

19

assault, the Court should decline to exercise jurisdiction over these state common law claims.

### C.     Aery's Motion for Summary Judgment

Aery also moves for summary judgment because "[n]o facts can possibly be challenged" and Sgt. Collins "was ordered by her superior Lt. Wadzinski to apologize, which she did." (Doc. No. 39.) He elaborates in later pleadings that Sgt. Collins's actions of coughing and making certain remarks constituted violations of his Fourth, Eighth, and Fourteenth Amendment rights as well as negligence and assault. (Doc. Nos. 79, 82.) However, because this Court already recommends that summary judgment be granted in favor of Sgt. Collins due to Aery's failure to exhaust his administrative remedies and failure to show a prior physical injury as required by the PLRA, this Court does not address the merits of Aery's summary-judgment motion (or, for that matter, the additional arguments raised by Sgt. Collins in her motion for summary judgment regarding the merits of Aery's Complaint). *See Barbee v. Corr. Med. Servs.*, 394 F. App'x 337, 338 (8th Cir. 2010) (holding that "the district court should not have reached the merits of [the prisoner's] claims" where the defendants raised a nonexhaustion defense and the record supported that defense); *Lyon*, 305 F.3d at 809 (holding an inmate "must first have exhausted his administrative remedies pursuant to the grievance procedure of the prison before his civil rights complaint could proceed"); *Nasseff v. Lisowy*, No. 14-CV-4704 (JNE/BRT), 2015 WL 4545413, at *5 (D. Minn. July 28, 2015) (denying prisoner's motion for summary judgment because he failed to exhaust his administrative remedies).

Instead, because the PLRA bars Aery's Fourth, Eighth, and Fourteenth Amendment claims, this Court recommends that Sgt. Collins's motion for summary judgment be granted, Aery's motion for summary judgment be denied, and that this action be dismissed with prejudice.[9]

### D.    Aery's Additional Pending Motions

Before and after both parties filed for summary judgment, Aery filed several motions and requests that remain pending before the Court: (1) "Motion – Arrest and Detain Defendant" (Doc. No. 34) (moving the Court to arrest and detain Sgt. Collins); (2) "Motion – Amend Demand" (Doc. No. 36) (requesting the Court amend Aery's demand from $50,000 to $10,000,000); (3) "Motion – Non-Dispositive Expedited Informal Request Telephone Conference Scheduling" (Doc. No. 37) (asking the Court to set aside time to discuss various legal and factual questions); (4) "Motion to Compel" (Doc. No. 40) (moving the Court to compel Sgt. Collins to respond to his interrogatories and

---

[9]    As noted, dismissal with prejudice is recommended. While "a failure to exhaust typically warrants only dismissal without prejudice," prejudice may be warranted when an offender fails to file a grievance within the time allowed by DOC policy. *See Allen v. Jussila*, No. 08–6366, 2010 WL 3521934, at *9 (D. Minn. Aug. 5, 2010) ("[B]ecause Allen can no longer exhaust his claims [due to the expiration of the deadline for appealing his prison grievances], he has procedurally defaulted on them and his suit is precluded forever and must be dismissed with prejudice"), aff'd 430 F. App'x 555 (8th Cir. 2011). Here, as already stated, the applicable DOC policy required that an offender file a facility grievance within 30 days of the occurrence of the issue being grieved. (Westphal Decl., Ex. 8 at 3.) It also required that a grievance appeal be submitted within 21 calendar days of the date the facility grievance authority signed the response to the facility grievance. (*Id.* at 5.) Aery missed both deadlines. Accordingly, this Court concludes that Aery's claim is procedurally defaulted and recommends that this action be dismissed with prejudice.

compensate him $1,000 for "time and suffering"); (5) a letter requesting an extension of time "for Collins to respond to my Written Interrogatories" and for Aery to be placed on "home arrest or treatment" (Doc. No. 43); (6) "Motion to Allow/Submit Exhibits as Evidence" (Doc. No. 45) (moving the Court to accept all exhibits attached to his Complaint as "real Evidence to be used in this proceeding during Trial and before then if necessary"); (7) "Motion to Compel Production of Documents or Electronically Stored Information" (Doc. No. 55) (moving the Court to compel production of various policies and procedure documents, phone call records, digital videos, and emails); (8) "Motion to Modify Scheduling Order" (Doc. No. 67) (requesting an extension of the discovery deadline); (9) a letter requesting that Sgt. Collins be "held in contempt of court for lying" (Doc. No. 87); (10) a motion in limine requesting the court to "restrict access and presentation in regard to pending and prior criminal charges" (Doc. No. 88); and (11) a request for "proper attire" for trial and "instructions from the Court" regarding trial. (Doc. No. 89.)

This Court has reviewed all of Aery's pending requests and motions. None affect the disposition reached by this Court. The discovery requested by Aery—including various policies and procedure documents, phone call records, digital videos, and emails—are unrelated and have no effect on this Court's analysis of Aery's failure to exhaust the DOC's grievance procedure and his failure to allege a prior physical injury as required by the PLRA. Therefore, because this Court recommends that this matter be dismissed with prejudice as explained above, this Court also recommends that Plaintiff's

other pending requests and motions (Doc. Nos. 34, 36, 37, 40, 43, 45, 55, 67, 87, 88, and 89) be denied as moot.

## RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Sgt. Collins's Motion for Summary Judgment (Doc. No. 70) be **GRANTED**;

2.    Aery's Motion for Summary Judgment (Doc. No. 39) be **DENIED**;

3.    This action be **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies and for failure to allege a prior physical injury as required by the Prison Litigation Reform Act of 1995; and

4.    Aery's other pending motions and requests (Doc. Nos. 34, 36, 37, 40, 43, 45, 55, 67, 87, 88, and 89) be **DENIED** as moot.

Dated: March 17, 2022                        *s/ Becky R. Thorson*
                                             BECKY R. THORSON
                                             United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).